## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Ryan S. Burke, depose and state as follows:

## AGENT BACKGROUND

1.      I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since October 2012. I am currently assigned to the FBI's New Hampshire Safe Streets Gang Task Force ("SSGTF") where I am tasked with investigating gang members, violent criminals, and major offenders throughout the state. I primarily work alongside the Manchester Police Department ("MPD") as part of an initiative focused on reducing gun violence and other crime in the city of Manchester.

2.      Throughout my career, I have led and/or been involved with investigations of robberies, kidnappings, murders, fugitives, extortions, threats, drug distribution, illegal possession of firearms, and other crimes. My investigations have included the use of the following investigative techniques: physical surveillance; handling of cooperating sources and witnesses; exploitation of cellular, social media, and Internet Protocol ("IP") based communications data; execution of search and seizure warrants; wire, electronic, and oral wiretaps; and the execution of arrest warrants.

3.      Based on my training, experience, and information provided to me by other law enforcement officers, I am familiar with the modus operandi used by individuals engaged in the violation of various criminal offenses, such as those related to acts of violence, firearms, and controlled substances. For example, I have handled many cooperating sources and witnesses who have provided information to me specifically related to shootings, the distribution of controlled substances, and various firearms offenses. I have also reviewed thousands of court-authorized wiretap intercepts between drug traffickers, violators of firearm offenses, individuals conspiring

1

to commit armed robberies, and individuals engaged in the violation of other offenses. Many of these investigations have resulted in the execution of search warrants, arrest warrants, and eventual convictions.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device (hereafter, the "**Target Device**")—which is currently in law enforcement's possession, and the extraction for that property of electronically stored information described in Attachment B.

5. The Target Device to be searched is the following:

   a. Black Apple iPhone in a black case seized by law enforcement in Manchester, NH on September 1, 2021 from Michael Francis.

The Target Device is secured at the Manchester Police Department located at 405 Valley St, Manchester, NH 03103.

6. Based on the information contained herein, there is probable cause to believe that the **Target Device** contains evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. § 922(g)(1) [Felon in Possession of Ammunition & Firearm], 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Offense], 21 U.S.C. § 841 [Distribution of Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances], and 18 U.S.C. § 521 [Criminal Street Gangs].

7. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know

about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause as it relates to the issuance of the requested warrant.

8. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

9. On September 1, 2021, law enforcement observed Michael Francis (YOB: 1987) drive in a white Honda Accord from his residence to the residence of Emilio Flores (YOB: 1991). Upon arrival, Flores was observed putting a bag inside of the Honda Accord, and then entering the front passenger seat. Francis and Flores then departed together in the Honda Accord and drove to the TD Bank located at 293 South Main Street in Manchester, NH. Francis then entered the bank while Flores remained inside the Honda Accord.

10. Immediately after Francis entered the bank, law enforcement followed and arrested Francis based on a state parole violation. During his arrest, Francis left his cellular phone – the **Target Device** – on the bank teller counter. It was seized by law enforcement pending this application for a search warrant. Simultaneous to Francis' arrest, law enforcement secured the Honda Accord that Francis was driving pursuant to a search warrant previously authorized on August 25, 2021 by the Honorable United States Magistrate Judge Daniel J. Lynch (District of New Hampshire).[1] The search of the Honda Accord resulted in the seizure of two phones which

---

[1] See case No. 21-mj-220-01-DL.   The warrant authorized the search of the Honda Accord for evidence related to violations of 18 U.S.C. § 922(g)(1) [Felon in Possession of Ammunition & Firearm], 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Offense], 21 U.S.C. § 841 [Distribution of Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances], and 18 U.S.C. § 521 [Criminal Street Gangs], and included electronic devices and the information contained on the devices.

3

belonged to Flores; $10,000 in United States Currency; and approximately one kilogram of a substance confirmed to be cocaine.

11. A review of the cellular phones which belonged to Flores seized from inside the Honda Accord revealed significant communication between Francis and Flores related to various criminal activity. The following are examples of conversations between the two men which confirm their partnership in a conspiracy to distribute controlled substances.

12. On May 16, 2021, Francis sent Flores a picture of a bottle of xylazine – a liquid sedative for horses which I believe could be used as a cutting agent to be mixed with controlled substances. The following conversation then took place:

- 5/16/2021 2:01:16 PM – Francis to Flores – Will this work
- 5/16/2021 2:03:25 PM – Flores to Francis – Yea
- 5/16/2021 2:03:53 PM – Francis to Flores – How do we get it to powder
- 5/16/2021 2:04:07 PM – Flores to Francis – Cook it

13. On May 29, 2021, the following conversation took place which I believe was a discussion regarding payment for controlled substances. Based on my training and experience, I know "bread" is a term used to describe money and "tag" is a term referencing the cost of controlled substances.

- 5/29/2021 11:21:18 PM – Flores to Francis – I put the bread and 300 in there for u
- 5/29/2021 11:21:59 PM – Francis to Flores – Ok thank you!
- 5/29/2021 11:22:04 PM – Francis to Flores – What's the tag
- 5/29/2021 11:22:26 PM – Flores to Francis – 10800

14. On May 30, 2021, the following conversation took place in reference to a previous discussion Flores and Francis had regarding a large-scale cocaine conspiracy in Massachusetts:

- 5/30/2021 5:31:43 PM – Francis to Flores – Send me the link to the shit u showed me earlier

- 5/30/2021 5:32:08 PM – Flores to Francis - https://www.justice.gov/usao-ma/pr/nine-men-charged-large-scale-cocaine-conspiracy

15. On July 10, 2021, the following conversation took place wherein Flores asked Francis for a specified quantity of what I believe to be controlled substances. Flores then continued to ask Francis to also leave out "white" too, which I know based on my training and experience is a term commonly used in reference to cocaine.

- 7/10/2021 8:32:53 PM – Flores to Francis – Can I grab 30 and mix it up in a lil bit
- 7/10/2021 8:46:56 PM – Flores to Francis – Can u leave out the white too
- 7/10/2021 8:47:11 PM – Flores to Francis – my bad to bug you
- 7/10/2021 8:47:13 PM – Francis to Flores – Yup I got you
- 7/10/2021 8:47:26 PM – Francis to Flores – No you're good no worries

16. On July 11, 2021, Flores sent a picture of what appears to be 134 grams of controlled substances on a digital scale to Francis. With the picture, Flores told Francis, "That's what's left."



17. On August 16, 2021, Flores messaged Francis and asked, "When u get back can I grab 3 Tina," to which Francis replied, "Yes sir." I know based on my training and experience that "Tina" is a term often used a reference to methamphetamine.

5

18. On September 1, 2021, following the arrests of Francis and Flores and the search of the Honda Accord, the Honorable United States Magistrate Judge Daniel J. Lynch (District of New Hampshire) authorized warrants to search Francis' apartment and Flores' apartment. The apartment searches were conducted that same evening and resulted in the seizure of four firearms with ammunition; approximately 450 grams of a substance believed to be methamphetamine; approximately 473 grams of a substance believed to be fentanyl; and approximately two kilograms of a substance confirmed to be cocaine.

19. Based upon the quantities of controlled substances seized from Francis and Flores; the firearms seized from Francis – who I know from a review of his criminal history to be a person prohibited from possessing firearms because of his felony convictions; the documented criminal street gang affiliation of Francis and Flores; and the conversations that took place between them as evidenced by Flores' cellular phones, I believe the **Target Device** will contain evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. § 922(g)(1) [Felon in Possession of Ammunition & Firearm], 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Offense], 21 U.S.C. § 841 [Distribution of Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances], and 18 U.S.C. § 521 [Criminal Street Gangs].

20. Specifically, I believe the **Target Device** will contain evidence of the aforementioned violations because the conversations referenced above from Flores' cellular phones require that Francis also used a cellular phone to participate in the conversations. Francis has a history of using cellular devices like the **Target Device** to facilitate criminal activity. More generally, I know through my training and experience that drug traffickers and gang members like Francis commonly use cellular phones such as the **Target Device** to facilitate illegal drug/firearm transactions and to discuss matters related to gang activity.

21. Based upon my training, knowledge, and experience, I know that cellular telephones such as the **Target Devices** are capable of storing information including, but not limited to, text and audio communications, call history, contact information, calendar entries, downloads, applications, videos, photographs, and electronic documentation in the cellular telephone's memory. In addition, I know that a forensic examination of a cellular telephone and these other devices can result in the retrieval of such data which has been stored on them, even after the passage of time, because files that have been hidden or deleted can still be recovered.

22. Based upon training, knowledge, and experience as well as from information obtained from other law enforcement officers, I know that it is common practice for individuals engaged in the possession and trafficking of drugs, weapons, and ammunition to routinely:

- Utilize cell phones, text messaging apps, social media, and coded communications to interact with and do business with their customers, suppliers, confederates, and couriers;
- Utilize multiple cell phones to evade law enforcement detection; and
- Utilize firearms in furtherance of their illegal activities.

23. Therefore, I know that evidence of crimes involving drugs, weapons, ammunition, and criminal street gang affiliation can be found in electronic media such as cell phones. Such evidence includes, but is not limited to:

- Names, addresses, telephone numbers, usernames, and email addresses of co-conspirators;
- Messages/emails sent to or received from co-conspirators or other entities necessary for conducting illegal activity such as arranging travel and transportation;
- Photographs/videos of themselves and co-conspirators;
- Photographs/videos of contraband and proceeds of illegal activity;
- Records of social media and app usage in furtherance of illegal activity;
- Records of internet activity in furtherance of illegal activity;

- Calendar entries and to-do lists; and
- Financial information and bank accounts used in furtherance of illegal activity.

24.     For the aforementioned reasons, I believe Francis conspired with criminal street gang members to illegally possess and distribute various controlled substances, firearms, and ammunition and that he utilized the **Target Device** to facilitate this criminal activity. Therefore, probable cause exists that evidence of this activity is contained on the **Target Device**.

25.     The **Target Device** is currently in storage at the Manchester Police Department located at 405 Valley St, Manchester, NH 03103.   In my training and experience, I know that the **Target Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Target Device** first came into the possession of the Manchester Police Department.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

- a. Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

8

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS:   A GPS navigation device uses the Global Positioning System to display its current location.   It often contains records the locations where it has been.   Some GPS navigation devices can give a user driving or walking directions to another location.   These devices can contain records of the addresses or locations involved in such navigation.   The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.   Each satellite contains an extremely accurate clock.   Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.   These signals are sent by radio, using specifications that are publicly available.   A GPS antenna on Earth can receive those signals.   When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA:   A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.   Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.   PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.   Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can store any digital data.   Most PDAs run computer

software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. I know that many smartphones like the **Target Device** (which are included in Attachment B's definition of "computer hardware") can now function essentially as small computers. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training, experience, and information provided to me by other law enforcement personnel, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

29.     *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

32. Based on the information described above, I believe Francis, Flores, and others yet unknown worked together to distribute controlled substances within the District of New Hampshire. Additionally, I believe Francis – an individual prohibited from possessing firearms – illegally acquired firearms and ammunition that were seized from him within the District of New Hampshire. Based on the information contained herein, I believe the **Target Device** will likely

contain evidence of those violations and will also evidence the affiliation of Francis, Flores, and others yet unknown with the Gangster Disciples criminal street gang.

33.     Therefore, I have probable cause to believe that evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. § 922(g)(1) [Felon in Possession of Ammunition & Firearm], 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Offense], 21 U.S.C. § 841 [Distribution of Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances], and 18 U.S.C. § 521 [Criminal Street Gangs], as further described in Attachment B, are contained within the equipment described in Attachment A.

/s/ Ryan S. Burke
Ryan S. Burke, Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Oct 26, 2021**
Time: **2:08 PM, Oct 26, 2021**

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

### *Description of Equipment to Be Searched*

The equipment to be searched consists of the following (hereafter, the "**Target Device**"):

a.   Black Apple iPhone in a black case seized by law enforcement in Manchester, NH on September 1, 2021 from Michael Francis.

The **Target Device** is currently secured at the Manchester Police Department located at 405 Valley Street, Manchester, NH.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



# ATTACHMENT B

## *Description of Information or Items to Be Seized*

I.     All records on the Target Device described in Attachment A, in whatever form, and tangible objects, which relate to violations of 18 U.S.C. § 922(g)(1) [Felon in Possession of Ammunition & Firearm], 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Offense], 21 U.S.C. § 841 [Distribution of Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances], and 18 U.S.C. § 521 [Criminal Street Gangs] and involve Michael Francis and/or Emilio Flores since January 1, 2021, including:

   A.   Evidence of who used, owned, or controlled the equipment;

   B.   Evidence of the user's past whereabouts;

   C.   The identities and aliases of individuals who participated in the violations listed above;

   D.   Lists of drug customers and related identifying information;

   E.   Types, amounts, and prices of drugs, guns, and ammunition purchased or sold as well as dates, places, and amounts of specific transactions;

   F.   Any information related to sources of drugs, guns or ammunition (including names, addresses, phone numbers, or any other identifying information);

   G.   All bank records, checks, credit card bills, account information, and other financial records;

   H.   The locations where evidence or other items related to the violations listed above was obtained, is stored, or has been discarded;

   I.   The methods of communication between individuals engaged in the violations listed above, including the telephone numbers, messaging applications, and social media accounts used by the individuals;

   J.   The substance of communications regarding the planning, execution, transactions, and/or discussions of the violations listed above;

   K.   The substance of communications regarding the acquisition or disposal of items involved in the violations listed above;

- L. The substance of communications regarding drugs, firearms, ammunition, and criminal street gang affiliation;

- M. The substance of communications regarding money, vehicles, communications devices, or other items acquired during or for activity that would result in the violations listed above;

- N. Photographs of items or information related to the violations listed above;

- O. The relationship between the users of the equipment and other co-conspirators;

- P. The identity, location, and travel of users of the Target Device and any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the violations listed above;

- Q. Evidence of malicious computer software that would allow others to control the equipment, software, or storage media, evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software;

- R. Evidence of the attachment of other hardware or storage media;

- S. Evidence of counter-forensic programs and associated data that are designed to eliminate data;

- T. Passwords, encryption keys, and other access devices that may be necessary to access the equipment;

- U. Records relating to accounts held with companies providing Internet access or remote storage of either data or storage media; and

- V. Records relating to the ownership, occupancy, or use of the location from which the equipment was obtained by law enforcement investigators.

II. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history

III. Serial numbers and any electronic identifiers that serve to identify the equipment.

## DEFINITIONS

For the purpose of this warrant:

- A. "Equipment" means any hardware, software, storage media, and data.

  B.  "Hardware" means any electronic device capable of data processing (such as a computer, digital camera, cellular telephone or smartphone, wireless communication device, or GPS navigation device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

  C.  "Software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

  D.  "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, USB or thumb drive, or memory card).

  E.  "Data" means all information stored on storage media of any form in any storage format and for any purpose.

  F.  "A record" is any communication, representation, information or data. A "record" may be comprised of letters, numbers, pictures, sounds or symbols.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### *Return of Seized Equipment*

If, after inspecting seized equipment, the government determines that the equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to preserve as evidence, fruits or

instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity and accuracy (but not necessarily relevance or admissibility) for evidentiary purposes.

If equipment cannot be returned, agents will make available to the equipment's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, personally-identifying information of victims; or the fruits or instrumentalities of crime.